UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SCHNEEBERGER INC., *et al.*,

    *Plaintiffs*,

v.

U.S. DEPARTMENT OF STATE, *et al.*,

    *Defendants*.

Civil Action No. 24-00988 (AHA)

## Memorandum Opinion

Schneeberger Inc., its Swiss affiliate, and the affiliate's employee, Javier Enrique de Onate Martinez, sue under the Administrative Procedure Act ("APA") and the Mandamus Act to compel various government officials to make a final decision on de Onate Martinez's nonimmigrant visa application. The defendants move to dismiss the complaint, arguing that this Court lacks subject-matter jurisdiction and that the complaint fails to state a claim of unreasonable delay. The Court agrees that the plaintiffs have failed to state a claim and grants the motion to dismiss.

**I.  Background[1]**

The B-1/B-2 visa program allows people with "residence in a foreign country which [they] have] no intention of abandoning" to enter the U.S. "temporarily for business or temporarily for pleasure." 8 U.S.C. § 1101(a)(15)(B). To get a visa, people apply through their local consulate and interview in person with a consular officer. 22 C.F.R. §§ 41.101(a), 41.102, 41.103(a). After the interview, "the consular officer must issue the visa [or] refuse the visa." *Id.* § 41.121(a). If the

---

[1]  As required at the pleading stage, the Court accepts the amended complaint's well-pled factual allegations and draws all reasonable inferences in the plaintiffs' favor. *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

consular officer concludes additional information could help establish the applicant's eligibility, the officer can "refuse" the visa and refer the application for further administrative processing. *Administrative Processing Information*, U.S. Dep't of State, https://perma.cc/44NKRVZE (last visited Aug. 5, 2025).

Schneeberger Inc. is part of a "multi-national group of companies" with three business units worldwide, including in the U.S. and Switzerland. ECF No. 1 ¶¶ 2–3. Schneeberger's Swiss affiliate employs de Onate Martinez as Vice President and Business Unit Manager. *Id.* ¶ 2. That job requires visiting the U.S. regularly to "align strategy, negotiate contracts, set up new projects, and attend events." *Id.* ¶ 3. It also requires travel to the U.S. to maintain and build client relationships. *Id.* ¶ 4.

For years, de Onate Martinez traveled to the U.S. under a visa waiver program, but in 2023 he was directed to apply for a B-1/B-2 nonimmigrant visa. *Id.* ¶¶ 5–6. He applied and, in 2023, interviewed at the U.S. embassy in Switzerland. *Id.* ¶¶ 1, 6. Although his complaint states that the embassy "refused to make a decision on the application," he concedes in his briefing that the consular officer at least nominally denied his visa and referred his application for additional administrative processing. *Id.* ¶ 1; ECF No. 14 at 5, 8–9. That processing is ongoing.

Schneeberger, its Swiss affiliate, and de Onate Martinez bring this action under the APA and the Mandamus Act to compel the government to take action on de Onate Martinez's visa application. *See* 5 U.S.C. § 706(1) ("The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed . . . ."); 28 U.S.C. § 1361 ("The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."). The defendants move to dismiss for lack of subject-matter jurisdiction and failure to state a claim under

Federal Rules of Civil Procedure 12(b)(1) and (6). Specifically, the defendants argue the plaintiffs lacked standing to bring this action, sued the wrong people, failed to state a claim for unreasonable delay, and did not account for other threshold issues.

## II.   Discussion

To survive dismissal under Rule 12(b)(1), a plaintiff must show that the Court has subject-matter jurisdiction to hear their claim. *See Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). That includes showing that the plaintiff has standing to pursue that claim. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). The Court must "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged,' and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive dismissal under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[A] well-pleaded complaint should be allowed to proceed 'even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely.'" *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015) (second alteration in original) (quoting *Twombly*, 550 U.S. at 556).

**A. At Least One Plaintiff Has Standing**

Given the defendants' standing argument and the Court's "independent obligation" to ensure the plaintiffs have standing, the Court starts there. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). "To establish Article III standing, the plaintiff must have 'suffered an injury in fact' that 'is fairly traceable to the challenged action of the defendant' and it must be 'likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" *Banner Health v. Price*, 867 F.3d 1323, 1333–34 (D.C. Cir. 2017) (quoting *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180–81 (2000)). "It is settled that in a case involving joined, individual plaintiffs bringing a shared claim seeking a single remedy, Article III's case-or-controversy requirement is satisfied if one plaintiff can establish injury and standing." *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019).

The Court concludes de Onate Martinez has standing. The alleged unreasonable delay in processing his visa application is a cognizable injury—a procedural injury with the very practical effect of preventing him from doing his job effectively. The defendants do not dispute de Onate Martinez has plausibly alleged that the delay constitutes a procedural injury. *See* ECF No. 10 at 14–15. Nor could they: "Congress specifically recognized the right to reasonably expeditious agency action when it passed the APA." *Khan v. Blome*, No. 22-cv-02422, 2022 WL 17262219, at *3 (D.D.C. Nov. 29, 2022). The defendants instead argue the allegations of delay here are not enough because de Onate Martinez cannot point to a related substantive injury. The defendants correctly observe that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). But de Onate Martinez has described concrete professional harms resulting from the delay. Courts in this district have consistently found that a plaintiff suffers an injury in fact when an unreasonable delay in visa

4

adjudication causes professional, financial, or other hardship. *See, e.g.*, *Pourabdollah v. Blinken*, No. 23-cv-01603, 2024 WL 474523, at *3 (D.D.C. Feb. 7, 2024); *Rahman v. Blinken*, No. 22-cv-02732, 2023 WL 196428, at *2 (D.D.C. Jan. 17, 2023); *Rashidian v. Garland*, No. 23-cv-01187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *Khan*, 2022 WL 17262219, at *3. This Court agrees.

De Onate Martinez has plausibly alleged this injury is caused by the ongoing limbo and would be redressed by a court order putting an end to it. Contrary to the defendants' argument, that is so irrespective of whether "forcing another decision now would lead to a different result." ECF No. 10 at 21; *see Ahmed v. Blinken*, 759 F. Supp. 3d 1, 9 (D.D.C. 2024) (rejecting the same argument). Because de Onate Martinez has plausibly alleged standing, the Court need not resolve whether the companies independently have standing.

### B. Most Of The Named Defendants Are Proper Parties

The defendants next argue that the federal officials sued—the Secretary of State; the Assistant Secretary of State for Consular Affairs; the Acting Director of the Office of Screening, Analysis, and Coordination in the State Department's Bureau of Consular Affairs; and the Secretary of Homeland Security—do not adjudicate visa applications and therefore should be dismissed.

The plaintiffs concede their claim against the Secretary of Homeland Security "cannot survive." ECF No. 14 at 7 n.2. But the defendants' argument is unpersuasive as to the Secretary of State; the Assistant Secretary of State for Consular Affairs; and the Acting Director of the Office of Screening, Analysis, and Coordination. The plaintiffs ask the Court to compel efficient resolution of de Onate Martinez's visa application, and the complaint plausibly alleges that these defendants have the authority to direct consular officers and screening personnel to take action on visa adjudications. It alleges the Secretary of State enforces laws that dictate the "duties and

5

functions of diplomatic and consular officers of the United States"; the Assistant Secretary of State for Consular Affairs oversees "all consular – including non-immigrant visa – matters"; and the Acting Director of the Office of Screening, Analysis, and Coordination "is responsible for screening noncitizens who apply for U.S. visas for potential security-related grounds of visa ineligibility." ECF No. 1 ¶¶ 15–17; *see Khazaei v. Blinken*, No. 23-cv-01419, 2023 WL 6065095, at *4 (D.D.C. Sep. 18, 2023) (concluding that "nothing precludes" the Secretary of State from directing consular officers to decide pending visa applications expeditiously); *Zoroofchi v. Rubio*, No. 24-cv-01556, 2025 WL 928607, at *3 (D.D.C. Mar. 27, 2025) (concluding the same with respect to the Assistant Secretary of State for Consular Affairs and the Acting Director of the Office of Screening, Analysis, and Coordination).

The defendants observe that the Immigration and Nationality Act "grants consular officers 'exclusive authority to review applications for visas, precluding even the Secretary of State from controlling their determinations.'" *Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021) (quoting *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999)). That is true, but de Onate Martinez is not asking the Court to compel the defendants to control the outcome of visa determinations. *See Al-Gharawy v. DHS*, 617 F. Supp. 3d 1, 10 (D.D.C. 2022); *Ahmadi v. Scharpf*, No. 23-cv-00953, 2024 WL 551542, at *4 (D.D.C. Feb. 12, 2024).[2]

### C. The Complaint Does Not State An Unreasonable Delay Claim

In cases challenging unreasonable agency delay, "the standards for obtaining relief" under the APA and the Mandamus Act are "essentially the same." *Viet. Veterans of Am. v. Shinseki*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010). In *Telecommunications Research & Action Center v. FCC*,

---

[2]   The named defendants are sued in their official capacity, so the individuals who currently hold these positions are "automatically substituted" for their predecessors. Fed. R. Civ. P. 25(d).

750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), the D.C. Circuit identified six non-exclusive factors that guide the unreasonable delay analysis:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonable delayed.

*TRAC*, 750 F.2d at 80 (quotation marks and citations omitted); *see Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (recognizing that the *TRAC* factors are not exhaustive). These factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). Here, the factors favor dismissal.[3]

The first *TRAC* factor is the "most important consideration" and the second factor "gives content to the first." *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024) (quotation marks and citations omitted). They evaluate "the extent of and reasons for the agency delay." *Id.* That is, they "get at whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Here, there is no specified schedule. At most, Congress has expressed its "sense" that "the processing of an immigration benefit application

---

[3] The plaintiffs argue that "application of *TRAC* at the motion to dismiss stage is wholly premature." ECF No. 14 at 2. However, the D.C. Circuit has blessed this approach by affirming dismissals of visa delay cases for failure to state a claim based on the *TRAC* factors. *See Da Costa*, 80 F.4th at 340–46; *Mukkavilli v. Jaddou*, No. 23-cv-05138, 2024 WL 1231346, at *2 (D.C. Cir. Mar. 22, 2024) (per curiam).

7

should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). That "language is insufficient to set a deadline" and serves as an "aspirational statement" and "a ruler against which the [agency's] progress must be measured." *Da Costa*, 80 F.4th at 344 (alteration in original) (citation omitted). Assuming de Onate Martinez's visa counts as an "immigration benefit application," the non-binding congressional aspiration "somewhat favors" him because he has been waiting more than 180 days. *Id.* But, ultimately, in the absence of a specific deadline, "courts typically turn to case law as a guide" to assess the reasonableness of a visa delay. *Sarlak v. Pompeo*, No. 20-cv-00035, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020). Courts have recognized "[t]here is 'no *per se* rule as to how long is too long' to wait for agency action." *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). However, they "have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak*, 2020 WL 3082018, at *6 (citation omitted) (collecting cases). Here, de Onate Martinez's visa application was in administrative processing for just over six months when he brought this action in April 2024 and, even accounting for the time since, the delay is still within the range that courts have found consistent with a rule of reason. It has not reached the "level of disproportionality" necessary to tip these two factors in his favor. *Da Costa*, 80 F.4th at 344.

The third and fifth *TRAC* factors address the interests affected by agency delay, including whether human health and welfare are at risk. *TRAC*, 750 F.2d at 80. These factors tilt in de Onate Martinez's direction. The complaint alleges meaningful harm to his professional life because of the delay. While he waits for the defendants to adjudicate his visa, he cannot conduct business in the U.S., which means he is barred from visiting one of his company's three business units and

8

hindered in his efforts to interact with clients, pursue projects, and attend critical business development events. These are important interests, and the visa delay frustrates them. That said, de Onate Martinez does not allege the type of severe health or welfare threats that could offset the other factors.

The fourth *TRAC* factor asks if "expediting delayed action" will have a harmful effect on "agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The D.C. Circuit has noted the importance of this factor. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (observing that the circuit has "refused to grant relief" based on factor four, "even though all the other factors considered in *TRAC* favored it"). That can be especially true in the visa context. *Da Costa*, 80 F.4th at 340. Compelling agency action is disfavored when relief "would necessarily come 'at the expense of other similarly situated applicants,'" with "no net gain" in overall efficiency. *Id.* at 343–44 (quoting *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 192 (D.C. Cir. 2016); *In re Barr Lab'ys, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991)). Here, there is no basis to conclude that prioritizing de Onate Martinez's application would do anything but reorder applicants and prioritize him over others who have been waiting. De Onate Martinez argues that applications are not always processed in order of receipt. ECF No. 14 at 17. But even so, de Onate Martinez does not provide any basis for the Court to conclude that consular processing capacity is anything other than a zero-sum game. Granting relief would simply advantage de Onate Martinez relative to other applicants; there is no allegation that it would reduce delays more broadly. Because the relief sought entails bumping others who are ahead in the queue, factor four favors the defendants.

The sixth factor asks whether the agency's delay involves any bad faith. *TRAC*, 750 F.2d at 80. There is no such allegation here and accordingly the factor is "neutral." *Afghan & Iraqi*

*Allies v. Blinken*, 103 F.4th at 820 (citation omitted); *see* ECF No. 14 at 18 (explicitly disclaiming any allegations of bad faith and agreeing that the sixth factor is neutral).

Considered together, the *TRAC* factors counsel against relief here. There is no denying the "troubling backlog" of visa applications and the way it disrupts the lives of so many people. *Da Costa*, 80 F.4th at 344. But under binding precedent, the Court must conclude the plaintiffs have not stated a claim that entitles them to relief.[4]

### III.  Conclusion

For these reasons, the defendants' motion to dismiss is granted and this action is dismissed without prejudice. A separate order accompanies this memorandum opinion.

                                                                                                     _____
                                                                                                     AMIR H. ALI
                                                                                                     United States District Judge

Date:   August 6, 2025

---

[4] The defendants also argue for dismissal based on the doctrine of consular nonreviewability and the nondiscretionary duty requirement for unreasonable delay cases. *See* ECF No. 10 at 24, 30. Neither issue implicates the Court's Article III jurisdiction and the Court need not reach them because it dismisses the plaintiffs' claim on other grounds. *See Baan Rao*, 985 F.3d at 1027–29 (consular nonreviewability); *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (nondiscretionary duty); *Rashidian*, 2024 WL 1076810, at *5 & n.5 (explaining why the Court may proceed to the merits instead of addressing these two threshold issues).